UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

CATHERINE OKORO,

       Plaintiff,                          Civil Action No.: 2:11-CV-00267

v.

PYRAMID 4 AEGIS and
JEROME BATTLES,

       Defendant.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO HER CLAIMS UNDER THE FAIR LABOR STANDARDS ACT AND DEFENDANTS' COUNTERCLAIM OF TORTIOUS INTERFERENCE WITH CLIENT CONTRACTS**

## INTRODUCTION

Ms. Okoro, a single mother of four teenage children, worked for Defendants for nearly a year. She was instrumental in getting Defendants' business started. Once the business was running, she was active in running the business, including supervising staff and providing services to clients. However, Ms. Okoro was never paid for her work. In May 2010, after working since the prior June with no pay, Ms. Okoro finally quit and filed this lawsuit. After filing the lawsuit, Defendants for the first time alleged that she was responsible for causing clients to leave the facility. However, Defendants have absolutely no evidence that Ms. Okoro did anything to encourage clients to leave. In fact, Defendants have taken no action to even discover such evidence – either before or after filing the counterclaim.

1

## STATEMENT OF FACTS

Ms. Okoro and Mr. Battles met in 2008, when Mr. Battles was seeking to purchase insurance from Ms. Okoro. (PFF ¶1) When they met, Mr. Battles told Ms. Okoro about his business, Pyramid 4 Aegis. (PFF ¶3) Mr. Battles is the owner of Pyramid 4 Aegis and controls its operations. (PFF ¶2.) Mr. Battles told Ms. Okoro that he had opened the business, but was having a difficult time getting it started. (PFF ¶3) Mr. Battles eventually asked Ms. Okoro if she would perform work to get the business started and Ms. Okoro agreed. (PFF ¶3-4)

Ms. Okoro began working for Defendants on June 7, 2009. (PFF ¶6) Each day that Ms. Okoro worked, she noted the time she started to work and the time she stopped working. (PFF 7) Ms. Okoro recorded all of this time on a time sheet she created for the business. (PFF ¶7)

In the summer and early fall of 2009, Ms. Okoro's work primarily focused on getting the business ready to accept clients. (PFF ¶8) During this period, Ms. Okoro worked five hours per day and at least five days per week. (PFF ¶9) Initially, Ms. Okoro spent a significant amount of time cleaning the facility and purchasing necessary items for the facility. (PFF ¶10) Ms. Okoro attended five Community Based Residential Training sessions for her work with Defendants. Two of these sessions she attended with Mr. Battles. (PFF ¶5) Ms. Okoro also spent time researching the many regulations for a residential care facility and putting processes in place for the smooth running of the business. (PFF ¶11)

Ms. Okoro also spent a considerable amount of time on marketing for Defendants. (PFF ¶13) Ms. Okoro created a flyer to advertise the facility and then sent this flyer and other information to agencies which might refer clients to Defendants. (PFF ¶13) Ms. Okoro, along with Mr. Battles, drove to nursing homes, mental health facilities and placement agencies to

2

look for clients. She also organized and attended open houses for the facility. (PFF ¶13) Ms. Okoro reached out to referral networks and made marketing calls on behalf of the group home. (PFF ¶13)

In November, 2009, the first client came to stay at the facility. (PFF ¶14) Ms. Okoro also increased her hours of work to seven hours per day for five days per week. (PFF ¶15)

It was now necessary to hire staff. Ms. Okoro interviewed and made hiring decisions for the staff. (PFF ¶16) With the employees, Ms. Okoro also assumed the responsibilities of employee supervision, creating work schedules, presiding over employee meetings, confirming hours worked by the staff, submitting the hours for payroll purposes, filling in for employees who did not show for work, issuing discipline, and responding to requests for information from the Unemployment Division. (PFF ¶17)

Ms. Okoro also took on many responsibilities with respect to the clients. Ms. Okoro was the primary contact person with case managers, doctors, family members, employers, and medical providers of the clients; she helped to transport the clients to work and doctor appointments; she picked up prescription medicine; and shopped for groceries. (PFF ¶18)

Ms. Okoro also represented Pyramid 4 Aegis in a number of proceedings. She represented the group home in a court matter for a client. She also was the Defendant representative for client reviews. Finally, Ms. Okoro had been the person who was contacted when an attorney, representing a client, had a concern. (PFF ¶19)

Ms. Okoro continued to do this work through May 18, 2010. (PFF ¶20) It is undisputed that Ms. Okoro was never paid any money for any of the work that she did for Defendants. (PFF ¶21-22) Upon leaving and since that time, Ms. Okoro has not taken any steps to encourage

3

clients to leave Defendants' facility. (PFF ¶23-27) Ms. Okoro has also not taken any steps to encourage any employee to leave Defendants' employment. (PFF ¶28-29)

## ARGUMENT

*Standard of Review*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2nd Cir. 1990). Summary judgment is improper in a…case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner, Inc*., 770 F.2d 93 (7th Cir. 1985); *see also Holland v. Jefferson Nat'l Life Ins. Co*., 883 F.2d 1307, 1312 (7th Cir.1989).

Intent is not an issue under the Fair Labor Standards Act, which imposes an obligation upon employers who "suffer or permit" employees to work. 29 U.S.C. §203(g). Moreover, the

4

undisputed facts show that Ms. Okoro performed work for Defendants for which she was never paid. Therefore summary judgment is appropriate on that claim.

As for Defendants' sole counterclaim of (alleged) intentional interference with the client contracts, Mr. Battles admitted in his deposition that he has no evidence to support that claim. Therefore, summary judgment is also appropriate on Defendants' counterclaim.

*Fair Labor Standards Act Minimum Wage Violations*

While the Fair Labor Standards Act (FLSA) exempts from its protections workers who volunteer for non-profit or public entities, the DOL has made clear that the volunteer exemption cannot apply to individuals working for private sector for profit employers. *See* WH Op. Letter (Aug. 19, 1999), 1999 WL 1788145; http://www.dol.gov/elaws/esa/flsa/14c/2d.htm. Simply labeling a worker as a "volunteer" will not qualify that worker for volunteer status under the FLSA. *Cleveland v. City of Elmentdorf, Tex.*, 388 F.3d 522 (5th Cir. 2004).

It is undisputed that Pyramid 4 Aegis is a for-profit company, as opposed to a non-profit or public entity. (PFF ¶2.) It is further undisputed that Ms. Okoro provided services for Pyramid 4 Aegis. (PFF ¶20, Defendants Second Amended answer, Affirmative Defenses and Counterclaims ¶18.) When the employer is a private enterprise, as is Pyramid 4 Aegis, an individual like Ms. Okoro may not work without compensation; as such work would provide a windfall to the private employer. Therefore, when Ms. Okoro provided services for a Pyramid 4 Aegis, a profit generating enterprise, she was an employee for purposes of the FLSA.

5

Defendants' affirmative defense that Ms. Okoro was a volunteer for Defendants is not a defense. By law, Ms. Okoro could not work as a volunteer. By law, Defendants were required to pay her for her work.

Thus, Ms. Okoro was a covered employee, protected by the FLSA's minimum wage protections. 29 U.S.C. §206. Moreover, the FLSA mandated that Defendants -- Pyramid 4 Aegis and its individual owner and operator -- pay Ms. Okoro no less than the applicable minimum wage for all hours worked. 29 U.S.C. 206; *Walling v. A.H. Belo Corp.*, 316 U.S. 624. Therefore, by affording Ms. Okoro no compensation whatsoever for her work, Defendants violated the FLSA's minimum wage requirements.

***Joint Employer Liability of Pyramid 4 Aegis and Jerome Battles under the FLSA***

The FLSA's definition of "employer" is extremely broad and includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). Consequently, it is black letter law that an individual owner or officer of a corporation may be liable under the FLSA where that individual is responsible for the violation. *See Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages"); *Solis v. Saraphano's, Inc.*, 2011 U.S. Dist. LEXIS 43904, *9-12 (E.D. Wis. Apr. 22, 2011).

Here, the Amended Answer admits that Defendant Battles owns Pyramid 4 Aegis, "was primarily in control over operations and wages for Pyramid 4 Aegis," and "supervised Plaintiff's … work." (PFF ¶2) These admissions establish Defendant Battles' liability as a joint employer

6

under the FLSA. 29 U.S.C. §203(d); Agnew, 712 F.2d at 1514; Saraphano's, 2011 U.S. Dist. LEXIS 43904 at *9-12.  Accordingly, Plaintiff is also entitled to summary judgment on the issue of the joint employer liability of Defendants Battles and Pyramid 4 Aegis on the FLSA claims.

***Dismissal of the Counterclaim: There is NO Evidence that Ms. Okoro Interfered with ANY Client Contracts***

In Defendants' Second Amended Answer, Affirmative Defenses and Counterclaims, it alleged as follows:

> 36.     Upon information and belief, at a time between May 1, 2010 and June 30, 2010, Plaintiff intentionally interfered with the client contracts of Pyramid 4 Aegis, LLC.

In his deposition, Mr. Battles was asked what evidence he had that Ms. Okoro interfered with any client contracts.

> Q:    And the only evidence you have regarding Miss ---- is testimony from your daughter that she heard something about Miss ----- being –
> A:    Conversations, witness of the conversation about.
> Q:    Conversation with who?
> A:    Some of those girls.  The ones you – in here.  JonLisa and there was – Robinson, JonLisa.
> Q:    So it was conversations that your daughter had with some of the staff?
> A:    That was known to me, told to me.
> Q:    It was told to you by your daughter?
> A:    Yes.
> Q:    And is that the same evidence you have with respect to the young man?
> A:    Yes.

(PFF ¶ 26)

In Defendants' Second Amended Answer, Affirmative Defenses and Counterclaims, they further alleged as follows:

> 37.     Upon information and belief, the Plaintiff received compensation for her interference with the client contracts belonging to Pyramid 4 Aegis, LLC.

In his deposition, Mr. Battles was further asked what evidence he had that Ms. Okoro received any compensation for her actions.

> Q: Do you have any personal knowledge that [Ms. Okoro] received any money for coaching this young man to stay with his own family?
> A: No.
> Q: Do you have any knowledge that [Ms. Okoro] received any money for allegedly having Miss --- removed?
> A: No.

(PFF ¶29)

It appears that Defendants' only "evidence" supporting the allegation that Ms. Okoro interfered with the relationship with a client comes from office gossip overheard by Mr. Battles' daughter and then told to him. Such evidence is *triple* hearsay. Hearsay evidence, as with other evidence inadmissible at trial, shall not be considered to support a claim at the summary judgment stage. *Hong v. Children's Memorial Hosp.,* 993 F.2d. 1257, 1264-1265 (7th Cir. 1993) Absent the hearsay evidence of this office gossip, Defendants have yet to produce **any** evidence that Ms. Okoro at any time has taken **any** steps to encourage any client to leave.

In addition, even assuming, arguendo, Defendants have sufficient evidence that Ms. Okoro encouraged clients to leave the facility, this does not mean that her actions were unlawful. Historically, Wisconsin courts have discussed the exception to the general rule of intentional interference with a contract in terms of a "privilege" to interfere. However, in adopting the *Restatement (Second) of Torts*, the courts have substituted the concept of "propriety" for privilege. *Hale v. Stoughton Hospital Ass'n, Inc.* 126 Wis.2d 267, 281-282 (Ct. App. 1985). In other words, liability only attaches when one intentionally **and improperly** interferes with the performance of a contract. *Id.* In this case, Defendants have no facts which would establish that Ms. Okoro *improperly* interfered with any client contracts.

8

To determine whether Defendants have evidence of *improper* interference by Ms. Okoro, the Court would need to consider the following:

(a) The nature of Ms. Okoro's alleged conduct;
(b) Ms. Okoro's motive;
(c) The Defendants' interests;
(d) The interests sought to be advanced by Ms. Okoro;
(e) The social interests in protecting the freedom of action of Ms. Okoro and the contractual interests of the Defendants;
(f) The proximity or remoteness of Ms. Okoro's alleged conduct to the interference;
(g) The relationship between the parties.

*Mackenzie v. Miller Brewing Company*, 234 Wis. 2d 1, 47 (Ct. App. 2000). Here, however, Defendants have no facts to support any impropriety by Ms. Okoro. Defendants are not able to identify what the nature of Ms. Okoro's alleged actions were. Defendants have no evidence of Ms. Okoro's motives for any alleged actions. Defendants have no evidence of any interests sought to be advanced by Ms. Okoro. Defendants attempted to allege in their counterclaim that Ms. Okoro benefited financially from her alleged actions. However, when questioned in his deposition, Mr. Battles was unable to point to any evidence to support this claim. In fact, Defendants simply have no evidence to support their counterclaim. Therefore, the claim should be dismissed. (PFF ¶29)

9

**CONCLUSION**

Based on the foregoing, Ms. Okoro respectfully requests this Court to enter an order in favor of her claim for wages under the Fair Labor Standards Act and dismissing Defendants' counterclaim for tortuous interference with a contract.

Dated: February 17, 2012.　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　s/ Marni Willenson
　　　　　　　　　　　　　　　　　　Marni Willenson
　　　　　　　　　　　　　　　　　　Willenson Law, LLC
　　　　　　　　　　　　　　　　　　542 S. Dearborn Street, Suite 610
　　　　　　　　　　　　　　　　　　Chicago, IL  60605
　　　　　　　　　　　　　　　　　　Phone:　　312-546-4910
　　　　　　　　　　　　　　　　　　Fax:　　　312-261-9977
　　　　　　　　　　　　　　　　　　Email:　　marni@willensonlaw.com
　　　　　　　　　　　　　　　　　　Bar No.


　　　　　　　　　　　　　　　　　　　s/ Rebecca L. Salawdeh
　　　　　　　　　　　　　　　　　　Rebecca L. Salawdeh
　　　　　　　　　　　　　　　　　　Salawdeh Law Office, LLC
　　　　　　　　　　　　　　　　　　7119 West North Avenue
　　　　　　　　　　　　　　　　　　Wauwatosa, WI  53213
　　　　　　　　　　　　　　　　　　Phone:　　414-455-0117
　　　　　　　　　　　　　　　　　　Fax:　　　414-918-4517
　　　　　　　　　　　　　　　　　　Email:　　rebecca@salawdehlaw.com
　　　　　　　　　　　　　　　　　　Bar No. 1027066

　　　　　　　　　　　　　　　　　　Attorneys for the Plaintiff