UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

CATHERINE OKORO,
        Plaintiff,                              Civil Action No.: 2:11-CV-00267

v.

PYRAMID 4 AEGIS and
JEROME BATTLES,
        Defendant.

**PLAINTIFF'S AMENDED PROPOSED FINDINGS OF FACTS**

1. Catherine Okoro and Jerome Battles met in approximately 2008. They met when Mr. Battles came to purchase insurance from Ms. Okoro. (Okoro Affidavit ¶ 2, Battles dep. p. 35)

2. At all relevant times, Jerome Battles has been the sole owner of Pyramid 4 Aegis. (Battles dep. p. 15-16; 84-85) Pyramid 4 Aegis is a for-profit company. (Battles dep. p. 56)

3. Mr. Battles and Ms. Okoro discussed Pyramid 4 Aegis. Mr. Battles told Ms. Okoro that he needed help getting the business started, as he was at work all day. (Okoro Affidavit ¶3-4, Battles dep. p. 35-38)

4. Ms. Okoro agreed to work for Mr. Battles to help him get the business started. (Okoro Affidavit ¶4-5 & 8, Battles dep. p. 38-41)

5. Ms. Okoro attended five Community Based Residential Training sessions. Two of these sessions she attended with Mr. Battles. (Okoro Affiavit ¶5)

1

6. Beginning on June 7, 2009, Ms. Okoro began performing work for Mr. Battles and Pyramid 4 Aegis. (Okoro Affidavit ¶10)

7. Each day that Ms. Okoro worked, she noted the time she started work and the time she stopped working. Ms. Okoro also kept track of the total hours she worked. She recorded all of this time on a time sheet she created for the business. (Okoro Affidavit ¶11)

8. In the summer and early fall of 2011, Ms. Okoro's work primarily focused on getting the business ready to accept clients. (Okoro Affidavit ¶12)

9. During this time period, Ms. Okoro worked five hours per day, at least five days per week. Ms. Okoro often worked on Saturdays as well. (Okoro Affidavit ¶13)

10. Initially, Ms. Okoro spent a significant amount of time cleaning the facility and purchasing necessary items for the facility. (Okoro Affidavit ¶14)

11. During this time, Ms. Okoro also spent significant time researching the many regulations for a residential care facility to ensure that Pyramid 4 Aegis would be approved to accept a client. (Okoro Affidavit ¶15)

12. Ms. Okoro also spent time putting processes in place for the smooth running of the business. For example, Ms. Okoro began drafting job descriptions, setting up Paychecks for payroll processing, and hiring the accountant for the business. (Okoro Affidavit ¶16)

13. Marketing was also an important part of Ms. Okoro's job. Efforts she took to market Pyramid 4 Aegis included:

    a. Ms. Okoro created a flyer about Pyramid 4 Aegis (Okoro Affidavit ¶17);

b. Ms. Okoro sent the flyer and other information about the group home to agencies who might refer clients to Pyramid 4 Aegis (Okoro Affidavit ¶17);

c. Ms. Okoro drove to nursing homes, mental health facilities and placement agencies to solicit for clients (Okoro Affidavit ¶17, Battles dep. p. 42);

d. Ms. Okoro organized and attended open houses held at the facility (Okoro Affidavit ¶17, Battles dep. p. 53);

e. Ms. Okoro connected Pyramid 4 Aegis with referral networks (Okoro Affidavit ¶17); and

f. Ms. Okoro made solicitation calls on behalf of the group home (Okoro Affidavit ¶17, Battles dep. p. 53-54).

14. In November, 2009, the first client came to stay at the facility. (Okoro Affidavit ¶18)

15. Once the facility started accepting clients, Ms. Okoro increased the hours she worked. Starting on November 2, 2009, Ms. Okoro began working seven hours per day for five days per week. Ms. Okoro now rarely worked on the weekends. (Okoro Affidavit ¶26)

16. Once the first client came to stay, it was necessary to hire staff to provide care. Ms. Okoro was responsible for interviewing and hiring employees. (Okoro Affidavit ¶19)

17. With the employees, Ms. Okoro assumed additional responsibilities. She was also responsible for the following:

a. Employee supervision (Okoro Affidavit ¶21, Battles dep. p. 41);

b. Creating the work schedule for employees (Okoro Affidavit ¶21);

c. Presiding over employee meetings (Okoro Affidavit ¶21);

d. Confirming hours worked by various employees (Okoro Affidavit ¶21);

e. Submitting the hours to paychecks for the employees to receive their paychecks (Okoro Affidavit ¶21, Battles dep. p. 43-44);

f. Filling in for employees who did not show up for work (Okoro Affidavit ¶21);

g. Issuing discipline (Okoro Affidavit ¶21, Battles dep. p. 41, 65-68); and

h. Responding to requests for information from the Unemployment Division (Okoro Affidavit ¶21).

18. With the clients, Ms. Okoro also had additional responsibilities, which included the following:

a. Ms. Okoro was the primary contact with case managers (Okoro Affidavit ¶22, Battles dep. p. 41)

b. Ms. Okoro was the primary contact with doctors (Okoro Affidavit ¶22);

c. Ms. Okoro was the primary contact with families and employers of client in the facility (Okoro Affidavit ¶22);

d. Ms. Okoro picked up clients from jobs and brought clients to doctors' appointments (Okoro Affidavit ¶22);

e. Ms. Okoro was the primary contact with pharmacies and health care agencies for client prescriptions (Okoro Affidavit ¶22);

f. Ms. Okoro picked up client prescriptions that were not otherwise delivered (Okoro Affidavit ¶22);

g. Ms. Okoro shopped for groceries necessary for the clients (Okoro Affidavit ¶22, Battles dep. p. 42-43);

19. Ms. Okoro also acted as a representative for the group home. In this capacity Ms. Okoro represented Pyramid 4 Aegis in court for a client that was detained. Ms. Okoro also represented Pyramid 4 Aegis for client reviews and awards at their jobs. Ms. Okoro was also contacted by an attorney on behalf of one of Pyramid 4 Aegis clients. (Okoro Affidavit ¶23)

20. Ms. Okoro continued to perform work for Pyramid 4 Aegis through May 18, 2010. (Okoro Affidavit ¶29; Battles dep. 24; Defendant Second Amended Answer, Affirmative Defenses and Counterclaims ¶8 and ¶14)

21. Ms. Okoro has never been paid for any of the work she has ever done for Pyramid 4 Aegis. (Okoro Affidavit ¶30; Battles dep. p. 47; Defendants' Second Amended Answer, Affirmative Defenses and Counterclaims ¶18)

22. Ms. Okoro is a single mother of four teenage children. She is solely responsible for the financial support of her family. At all times, Ms. Okoro believed that her work for Pyramid 4 Aegis would eventually be compensated. (Okoro ¶9)

23. At no time has Ms. Okoro ever taken any action to encourage any client to leave Pyramid 4 Aegis. (Okoro Affidavit ¶33)

24. Ms. Okoro believes that it continues to be in her best interest for Pyramid 4 Aegis to continue to be successful. She believes this will increase the likelihood that she will eventually be compensated for the work she did for Defendants. (Okoro Affidavit ¶33)

25. The only evidence Mr. Battles has regarding Ms. Okoro encouraging a client to leave Pyramid 4 Aegis is the triple hearsay evidence of alleged conversations among staff that Mr. Battles testified was overheard by his daughter. (Battles dep. p. 77-78)

26. In his deposition, Mr. Battles testified as follows:

    Q:  And the only evidence you have regarding Miss ---- is testimony from your daughter that she heard something about Miss ----- being –
    A:  Conversations, witness of the conversation about.
    Q:  Conversation with who?
    A:  Some of those girls. The ones you – in here. JonLisa and there was – Robinson, JonLisa.
    Q:  So it was conversations that your daughter had with some of the staff?
    A:  That was known to me, told to me.
    Q:  It was told to you by your daughter?
    A:  Yes.
    Q:  And is that the same evidence you have with respect to the young man?
    A:  Yes.
    (Battles dep. p. 77-78)

27. Mr. Battles has never spoken to any of the caseworkers responsible for the clients to determine what the reason was for the clients leaving or what caused the clients to leave. (Battles dep. p. 78)

28. With respect to Paragraph 37 of Defendants' Counterclaim, where it states, "Upon information and belief, the plaintiff received compensation for her interference with the client contracts belonging to Pyramid 4 Aegis" Mr. Battles has no evidence to support this allegation. (Battles dep. p. 76-77)

29. At his deposition, Mr. Battles testified as follows:

    Q:  Do you have any personal knowledge that [Ms. Okoro] received any money for coaching this young man to stay with his own family?
    A:  No.
    Q:  Do you have any knowledge that [Ms. Okoro] received any money for allegedly having Miss --- Lee removed?
    A:  No.
    (Battles dep. p. 77)

30. At no time has Ms. Okoro ever taken any action to encourage any employee to leave Pyramid 4 Aegis. (Okoro ¶32, Affidavit of Tylisa Robinson, Affidavit of Jonlisa Covington)

6

31. Defendant no longer asserts a counterclaim that Ms. Okoro intentionally interfered with the employment of Defendants' employees.  (Defendants' Second Amended Answer, Affirmative Defenses and Counterclaims)

Dated this 17th day of February, 2012.

                RESPECTFULLY SUBMITTED:

                s/Rebecca L. Salawdeh
                **Rebecca L. Salawdeh**
                Salawdeh Law Office, LLC
                7119 W. North Avenue
                Wauwatosa, WI  53213
                Phone: 414-455-0117
                Fax:      414-918-4517
                Email:   rebecca@salawdehlaw.com

                s/Marni Willenson
                **Marni Willenson**
                Willenson Law, LLC
                542 S. Dearborn Street, Ste. 610
                Chicago, IL  60605
                Phone: 312-546-4910
                Fax:      312-261-9977
                Email:   marni@willensonlaw.com
                *Attorneys for Plaintiff*