UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CATHERINE OKORO,

    Plaintiff,

    v.                                                              Case No. 11-C-267

PYRAMID 4 AEGIS and
JEROME BATTLES,

    Defendants.

**DECISION AND ORDER ON COMPUTATION OF UNPAID WAGES,
LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS**

    This is a case that was tried to a jury on one issue: the number of hours that the plaintiff, Catherine Okoro ("Okoro"), worked for defendant Pyramid 4 Aegis. The case was tried on only one issue because the court had previously granted partial summary judgment to the plaintiff with respect to liability on her claim under the Fair Labor Standards Act, 29 U.S.C. § 210, *et. seq*. ("FLSA").

    On September 26, 2012, the jury returned a verdict in which it found that Okoro worked 206 hours up until July 23, 2009. The federal minimum wage for this time period was $6.55 per hour. Applying that rate to the hours worked results in Okoro's lost wages for that time period being $1,349.30. The jury also found that Okoro worked a total of 1,378 hours for the time period on and after July 24, 2009. The federal minimum wage for this time period was $7.25. Applying that rate to the hours worked results in Okoro's lost wages for that time period being $9,990.50. Thus, the total amount of lost wages due to Okoro is $11,339.80. Based on the jury's verdict, Okoro shall be awarded that amount in lost wages.

    Okoro also seeks liquidated damages. Liquidated damages are mandatory unless an employer proves one of the limited affirmative defenses available under the Portal-to-Portal Act. *See Walton*

*v. United Consumers Club, Inc,* 786 F.2d 303, 310 (7th Cir. 1986) ("Doubling is not some disfavored 'penalty' . . . Double damages are the norm, single damages the exception, the burden on the employer.") Such being the case, unless the defendant proves to the court that its conduct was "in good faith" and taken with "reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act," 29 U.S.C. § 260, Okoro is entitled to liquidated damages.

Simply stated, the defendants here neither pled nor proved (nor even attempted to prove) a good faith defense. Thus, Okoro is entitled to liquidated damages, which by statute, is an additional amount equal to the unpaid minimum wages. *See* 29 U.S.C. § 216(b). Thus, Okoro shall be awarded the total sum of $22,679.60, as damages in this case.

As counsel are entitled to do in a successful prosecution of a case under the FLSA, Attorneys Rebecca L. Salawdeh and Marni Willenson seek attorneys' fees and costs. Title 29 U.S.C. § 216(b) provides, in pertinent part, that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Thus, the plaintiff in this action is entitled to be awarded reasonable attorneys' fee.

In support of their respective fee applications, Salawdeh and Willenson have submitted their billing records for work performed on the case, information regarding their professional accomplishments and experience, as well as affidavits or declarations from other lawyers in the community attesting to the reasonableness of their respective hourly rates. [1]

---

[1] Two of the lawyers who filed such declarations somewhat hedged their remarks with respect to Attorney Willenson, who is not from Milwaukee, by identically attesting: "It is my further understanding that Attorney Willenson is requesting that she be awarded fees at $390 per hour. I am not personally familiar with Attorney Willenson's work, but have reviewed her" curriculum vitae. "Based on her years of experience and her expertise concerning wage and hour matters, I believe that $390 per hour is a reasonable rate for her work." (Heins Decl. ¶ 8; Parsons Decl. ¶ 8.)

Salawdeh seeks fees in the amount of $39,630.00 for 126.1 hours of work on the case, computed at a billing rate of $300.00 per hour. Willenson seeks fees in the amount of $27,222.00 for 69.8 hours of work on the case, computed at a billing rate of $390.00 per hour. Willenson also seeks $1,066.50 for 10.4 hours of work performed on the case by her law clerk, computed at a billing rate of $135.00 per hour.

The defendants do not argue that no attorneys' fees should be awarded. Instead, they question the reasonableness of the billing rates, the amount of time spent on the case, the need for two lawyers on the case, and the appropriateness of awarding any attorneys' fees for a law clerk, i.e., for a non-lawyer. They note that this was not a complex case; liability was resolved on summary judgment; and, it was a mere one-day trial with only three witnesses being called to testify.

The first issue to address and resolve is the reasonableness of the billing rates for Salawdeh and Willenson. The defendants argue, citing *Soler v. G&U, Inc.*, 658 F. Supp. 1093, 1101 (S.D.N.Y) 1987), that the best evidence of a reasonable rate is what a lawyer customarily charges his or her clients. They then proceed to note that Salawdeh avers that she charges clients $300.00 per hour when "clients are able to pay." The defendants seem to suggest that they do not think Salawdeh should be allowed to use the $300.00 rate to seek attorneys' fees in the instant case because she only charges that rate when she has clients with an ability to pay that amount. The defendants assert the following:

> It is common knowledge that few clients in the Milwaukee area can afford to pay an attorney $300.00 an hour. Few clients would sign a contract with an attorney for $300.00 an hour. The reason for awarding attorney's fees is to adequately compensate attorneys for taking cases under the Fair Labor Standards Act. The language in *Soler* indicates that the rate paid to the attorney should be the rate which he would normally charge his clients. If the clients cannot afford to pay $300.00 per hour, the attorney will not have a customary charge of $300.00 per hour. It is the attorney's burden to prove what is a reasonable hourly rate. The proof should be billings from the attorney to her clientele. Those billings would indicate the rate

3

> customarily charged by Ms. Salawdeh to her clients. Those billings would also show both an agreement and an ability to pay by the client.

(Defs.' Br. 3-4.)

To determine fees under the FLSA, a court will generally follow the "lodestar" approach, multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)). "A reasonable hourly rate should reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Id.* It is the fee applicant's burden to prove the market rate, and once the applicant has met her burden, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *Id.*

Salawdeh submitted affidavits from various attorneys in the local geographic area demonstrating their hourly billing rates and experience. One attorney who almost exclusively represents plaintiffs in labor and employment cases and has years of experience comparable to Salawdeh's has offered an affidavit demonstrating that she charges for services at the rate of $320 per hour. (Lewison Aff. ¶¶ 6, 9, 13.) Another attorney, also with years of experience comparable to Salawdeh's, and who practices exclusively in employment law on behalf of employees, charges $400.00 per hour. (Heins Aff. ¶¶ 2, 3, 5.) Finally, an attorney with four years of experience in representing employees in labor and employment matters and an attorney with eight years of experience in the practice area of wage and hour claims charge $275 and $275-$300 per hour, respectively. (Reinstein Aff. ¶¶ 2, 3, 5; Parsons Aff. ¶¶ 2, 3, 5.)

The defendants assert that Salawdeh "should be required to justify her rate of pay by producing evidence of what she customarily charges clients who have a contract for legal fees with her." (Defs.' Br. 7.) They argue that her rate of $300 per hour is at the upper end of rates charged

4

by attorneys in the City of Milwaukee, citing to the $40 per hour rate that the Wisconsin Public Defender pays. However, this rate is established by statute by the Wisconsin legislature, *see* Wis. Stat. § 977.08(4m)(c), and the Wisconsin State Bar has long supported legislation to increase the rate, such as Assembly Bill 224, which was introduced in April 2009. *See* Adam Korbitz*, Bill to Increase SPD Private Bar Rate Dies As Legislature Adjourns for the Year*, State Bar of Wisconsin, May 12, 2012, http://www.wisbar.org/am/template.cfm?section=legislative_advocacy&template=/cm/content display.cfm&contentid=93154. Furthermore, and more importantly, this is neither a comparable nor a fair analogy to how much private practitioners taking on plaintiff's work in employment law cases should be compensated.

Moreover, the defendants offer a blanket statement that "few clients in the Milwaukee area can afford to pay an attorney $300.00 an hour," and that "[f]ew clients would sign a contract with an attorney for $300.00 an hour." (Defs.' Br. 3.) The defendants provide no evidence supporting their proposition, however. Other than identifying the rate at which the public defender reimburses private attorneys (a rate that the court already dismissed as not analogous), the defendants do not suggest what is a reasonable rate in this case.

It is the plaintiff's burden to demonstrate the market rate of compensation, and after reviewing the submitted materials, I am persuaded that a billing rate of $300 per hour is reasonable. It is well within the prevailing rate for Salawdeh's years of experience. Further, although Willenson's rate of $390 per hour may be at the high end of the range in the geographic area for this type of work, it falls within the acceptable range.

The defendants' second objection—related to the petition of fees for two attorneys—is more substantive. The defendants believe that the "issues presented in this case were neither novel nor difficult," the "issues did not require a high level of skill," and thus, the case did not require two

5

attorneys to represent Okoro. (Def.'s Br. 6.) Relatedly, the defendants maintain that Salawdeh's and Willenson's work overlapped or was duplicative.

In determining the reasonable number of hours, a court should exclude hours that are "excessive, redundant or otherwise unnecessary." *Small*, 264 F.3d at 708 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Courts should also consider the novelty and difficulty of the questions involved in determining an appropriate award of attorneys' fees. *Hensley*, 461 U.S. at 430 n.3. According to Salawdeh, she asked Willenson to assist her when it became clear that Okoro would need to pursue her rights in federal court. Salawdeh, a solo practitioner, states the following:

> As a solo attorney, I felt that Ms. Okoro would be much better served if I had a co-counsel. I am aware of the many deadlines and responsibilities that come with pursuing a case in federal court. I was concerned that as a solo attorney, there may be times when my work load would necessitate needing assistance of a co-counsel. This was, in fact, very true in Ms. Okoro's case. In fact, my September, 2012 schedule was very busy with two other ERD Adminstrative Hearings scheduled within two weeks of Ms. Okoro's trial. I was very grateful that I had co-counsel to partner with me in preparing for Ms. Okoro's trial.

(Salawdeh Decl. ¶ 19.) Salawdeh states that she and Willenson made every effort to not duplicate their time, and to the extent there was overlap in their time, Salawdeh "eliminated that time from [her] time record." (Salawdeh Decl. ¶¶ 20-21.)

For ease of reference, the court will focus on reimbursement for hours spent related to pre-trial work separately from hours spent in trial work. Courts have recognized that it is not unreasonable for a solo practitioner going to trial to hire co-counsel. *See Stelloh v. Wauwatosa Savings Bank*, Case. No. 07-C-1029, at *10 (E.D. Wis. Sept. 28, 2009). Thus, it is not unreasonable for the attorneys to discuss trial strategy, and the court does not find that Salawdeh and Willenson are seeking compensation for an inordinate amount of time spent in trial-related matters. Salawdeh handled the opening statement, Willenson handled the closing argument, and they alternated witness examinations. By focusing their attention on different aspects of the trial, the time Salawdeh and

6

Willenson spent at trial and in preparation for trial is not duplicative. Thus, this time will be awarded as reasonable.

With respect to pre-trial hours expended on a case, there is always the possibility that hours may be excessive, redundant, or unnecessary when one attorney seeks assistance from co-counsel throughout the entirety of the case. When co-counsel is involved from the outset of the case, the time invested in such case necessarily multiplies. Both counsel may review pleadings, documents from the opposing party, and court documents, to name a few. Of course, there is also an increase in email and telephone discussions.

In this case, the defendants have failed to identify precisely which hours they believe to be excessive, redundant, or unnecessary, instead relying exclusively on the bald assertion that this case needed the attention of only one attorney. This tactic of arguing that the work was duplicative without identifying where the duplicity exists is not particularly helpful to the court.

That being said, a review of the time entries submitted by Salawdeh and Willenson demonstrate that they made their best attempt to avoid "double-dipping." By and large, it appears that Salawdeh is not charging the time she spent discussing the case with Willenson—only Willenson included time entries for such work. Thus, their time spent discussing the case pre-trial does not appear to be redundant.

Salawdeh's having sought co-counsel stemmed from her concern that Okoro receive the best possible representation. Indeed, this concern is a laudable one. And, despite there being only one issue for trial, i.e., the number of hours Okoro worked for the defendants, other issues surfaced throughout the case and were ruled on where appropriate. However, the court finds that the combined effort of the lawyers spent drafting and reviewing the pleadings was redundant, and as such, will not award fees for both the drafting and reviewing of pleadings. Without any guidance

7

from the defendants regarding which time entries are duplicative, the court will do its best to identify the work that it believes was duplicative. Regarding Willenson's work, the court will not award fees for the following work hours:

| Time Date | Description | Hours | Amount |
| --- | --- | --- | --- |
| 3/8/2011 | Email exchange w/ co-counsel re complaint; forward FLSA complaints | 0.3 | 117 |
| 3/11/2011 | Phone conference w/co-counsel re: complaint | 0.1 | 39 |
| 3/11/2011 | Review and revise draft complaint | 1.1 | 429 |
| 3/14/2011 | Further revisions to draft complaint | 0.2 | 78 |
| 3/15/2011 | Final review of complaint and comment on same | 0.1 | 39 |
| 5/18/2011 | Review answer and counterclaim; e-mail to co-counsel re: same and possibility of motion to dismiss counterclaim | 0.2 | 78 |
| 6/8/2011 | Review model Rule 26 planning report and e-mail to co-counsel re: same | 0.1 | 39 |
| 6/17/2011 | Review draft discovery and comment on same in detailed e-mail to co-counsel | 0.2 | 78 |

| 7/25/2011 | Review second amended answer and counterclaim; email to co-counsel re: same | 0.2 | 78 |

Accordingly, the court will not award fees for 2.5 hours of Willenson's work, which amounts to $975.00. Because Salawdeh was the point of contact for Okoro, and because Salawdeh appears to have drafted the pleadings and filed them with the court, the court does not find her work hours excessive or duplicative in this regard. However, whether Salawdeh will or should bear any cost associated with Willenson's reduction in compensated hours is for the attorneys to work out between themselves.

The defendants' next argument relates to the proportionality of fees to damages. A factor that courts consider in deciding whether to adjust the lodestar amount is the proportionality of the lodestar to the damages recovered. *Spegon v. Catholic Bishop of Chic.*, 175 F.3d 544, 558 (7th Cir. 1999). The defendants argue that consideration of this factor requires that the court reduce the lodestar amount because Okoro obtained only $11,339.80 (before liquidated damages). However, this argument is not persuasive.

First, proportionality between fees and damages is not required. *Id.* "To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights." *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972). And, "'given the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the case.'" *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003 (collecting cases). From the beginning, the defendants had the ability to discover a ball-park range of how much money was at stake in this case. Moreover, the defendants elected to proceed through discovery, motions, and eventual trial (despite the court finding in Okoro's favor

9

on liability), and should bear the necessary costs of the plaintiff's prosecution of her case. *See City of Riverside v. Rivera*, 447 U.S. 561, 580-81 n. 11 (1985) (plurality opinion)("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (internal citation and quotation marks omitted). Simply because the attorneys' fees exceed Okoro's damage award does not mean that the court must necessarily reduce the amount to be awarded. To the contrary, arbitrarily adjusting the figure downward would work against the very reason Congress enacted § 216.

Finally, the defendants object to any charges for a third year law student. However, many courts have recently construed attorneys' fees to include law clerk and paralegal expenses. *Cameo Convalescent Center, Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir. 1984) (collecting cases); *see also Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("[T]he fee must take into account the work not only of attorneys, but also of . . . others whose labor contributes to the work product for which an attorney bills her client . . . ."). The defendants have offered no evidence challenging the rate or hours billed by the law clerk, nor have they cited any support for their one-sentence claim that no fees should be awarded for the law clerk's time expended on Okoro's case. Therefore, except for the 0.6 hours the law clerk spent reviewing, revising, and editing the motion to dismiss, which the court finds excessive and redundant,[2] fees in the amount of $985.50 will be awarded for 9.8 hours of law clerk time.

**NOW THEREFORE IT IS ORDERED** that the plaintiff, Catherine Okoro, shall take $22,679.60 from the defendants, Jerome Battles and Pyramid 4 Aegis, for unpaid wages and liquidated damages;

---

[2] Seeking fees for one attorney to draft a motion, another attorney to revise that motion, *and* a law clerk to also revise that same motion (i.e., 8/25/2011 law clerk review and revision of motion to dismiss) strikes the court as excessive and redundant.

**IT IS FURTHER ORDERED** that the plaintiff's motion for attorneys' fees and costs is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Attorney Rebecca L. Salawdeh shall take $40,742.37 from the defendants and that Attorney Marni Willenson shall take $27,434.62 from the defendants in attorneys' fees and costs;

**IT IS FURTHER ORDERED** that, on or before November 30, 2012, the plaintiff shall supplement her fee petition to recover for time her attorneys expended in preparing her reply brief in support of her fee petition;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly, subject to the plaintiff's supplementation of her fee petition.

**SO ORDERED** this 15th day of November 2012 at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge